Wanamaker, J.,
dissenting.
Cleveland’s municipal constitution, or city charter, went into effect January 1, 1914. The general assembly passed the statute known as the “Bauer Law” in 1915.
Question: Does the Bauer law apply to the municipal government of Cleveland, notwithstanding the city’s charter? This is the vital issue in this case.
The majority opinion admits that the charter of the city of Cleveland is supreme in municipal affairs, and that the city of Cleveland had, prior to the statute, the right to construct a rapid transit *96 system under the home-rule amendment. That part of the opinion reads:
“It is true that aside from the provisions of the charter, the city of Cleveland has authority to construct a rapid transit system under the provisions of Section 4, Article XVIII of the Constitution of Ohio, as amended September 3, 1912. No statute can deprive it of that power * * *.”
The majority opinion further admits that the city in the exercise of its municipal home-rule power could have so written its charter as to make the Bauer law void, or at least inoperative, in the city of Cleveland, as appears from the following language in the majority opinion:
“It is perhaps true that the charter of the city of Cleveland might have been so written as to deprive the city of the right to exercise statutory powers that may be exercised by other cities having a different charter or no charter at all.”
Let us now examine these admissions from the majority opinion and draw such legal and logical conclusions as are warranted.
The admission that the charter could have been so written must be based upon the fact that the “Home Rule” grant of power, directly and expressly given to the city, was clear and complete within the circle comprehended by the phrase, “all powers of local self-government.”
After making these admissions, which after all are only self-evident truths, apparent from the language of the constitution, the majority opinion proceeds to hold that the Bauer law is not only not in conflict with the city charter, but that it is clearly *97 authorized and provided for by Sections 1 and 2 of the city charter of Cleveland; that said Section 1 of the charter provided for adoption in advance of its passage of just such a statute as the Bauer law. The whole of the majority opinion is anchored solely on this proposition.
This simplifies and shortens the question and its answer.
Let us now critically examine Section 1. The first reference in the majority opinion is as follows:
“Section 1, among other powers enumerated, expressly reserves to the city of Cleveland ‘all powers that now are, or hereafter may be granted to municipalities by the constitution or laws of Ohio.5 ”
Simplified to meet this case it reads, “all powers hereafter granted to municipalities by laws of Ohio, that is, statutes.” And of course it is claimed that the Bauer law is such a statute.
In every city and village there are exercised three classes of governmental power:
1. Municipal.
2. State.
3. National.
The third class, national power, is not here involved. That leaves for our consideration class 1 and class 2.
Now the people through the “Municipal Home Rule” amendment expressly delegated all municipal powers, that is, “all powers of local self-government,” to municipalities. - They did not say “some power,” or “part power,” but “all power.”
*98 When the constitution expressly conferred this power (municipal power) upon the municipality, it necessarily implied a deprivation upon the part of the general assembly of the right to confer any such power; for, the people having once conferred it through the constitution, how could it be claimed that they delegated to the legislature the right to further confer this municipal power, which they themselves had theretofore directly conferred upon the municipality?
The bottom of the “Municipal Home Rule” amendment was to emancipate, to free, the cities and villages of Ohio from interference, exploitation and ripper legislation by the general assembly of Ohio, and to leave the matter of the government of the cities to the people of the cities.
It must follow, therefore, that the Bauer law did not grant any municipal power to the city of Cleveland. The constitution of Ohio had already done that, and, so far as the Bauer law attempted, so to do, it is void and inoperative on the city of Cleveland.
If it be true that all political power is inherent in the people, and that the people through a constitutional provision have conferred upon municipalities the powers of local self-government, then by the same truism they forbid any other branch of the government from conferring, adding to or subtracting from such grant of power. But if it be felt in some quarters that judicial decision is needed to support this axiomatic doctrine, it will be found in an opinion of this court in The Cincinnati Poly *99 clinic v. Batch, 92 Ohio St., 415, the first two paragraphs of the syllabus of which read as follows:
“1. Section 6, Article IV of the Constitution of Ohio as amended September 3, 1912, confers jurisdiction upon the courts of appeals to review, affirm, modify or reverse the judgments of the court of common pleas, superior courts, and other courts of record within the district. The general assembly has no power to enlarge or limit the jurisdiction conferred by the constitution of the state, but may provide by law for the method of exercising that jurisdiction.
“2. Section 26 of the act of April 17, 1913 (103 O. L., 279), as amended February 6, 1914 (104 O. L., 187), in so far as it purports to limit the appellate jurisdiction of the court of appeals to review, affirm, modify or reverse the judgment of the courts of common pleas within its district, is unconstitutional and void.”
Donahue, J., in the opinion, says at page 417:
“This amended section of the constitution of the state does not authorize the legislature to grant any jurisdiction, original or appellate, to the courts of appeals, but on the contrary specifically confers on these courts appellate jurisdiction,” etc.
Those concurring in that opinion were Judges Johnson, Wanamaker, Newman, Jones and Matthias. Nichols, Chief Justice, dissented.
In Wagner v. Armstrong, 93 Ohio St., 443, the same principle arose.
Paragraph 1 of the syllabus reads:
“Section 12224, General Code, purporting to vest the courts of appeals with jurisdiction in the trial *100 of cases on appeal, is unconstitutional and void. The jurisdiction of the courts of appeals in the trial of cases on appeal is expressly limited by the constitution to chancery cases, and this jurisdiction cannot be enlarged by the general assembly.”
Nichols, C. J., at page 446 of the opinion, says:
“Here is a plain attempt to enlarge the jurisdiction on appeal of the courts of appeals. This is a power that the general assembly does not possess. It was decided by this court in The Cincinnati Polyclinic v. Balch, 92 Ohio St., 415, that the jurisdiction of the courts of appeals was unalterably fixed by Section 6, Article IV of the new Constitution, and the legislature consequently could neither enlarge nor diminish it.”
All the judges of this court concurred in the paragraph of the syllabus above quoted, and in the judgment.
Now, what is the logic of these two cases? Merely this, that where the constitution has expressly spoken upon any given matter, such as conferring a power of a jurisdiction upon a court, or any other branch of the government, that the legislature may in no wise interfere with it. The grant of power was direct from the people to the court, and hence there was nothing for the legislature to confer upon the court as to such power or such jurisdiction.
In the case at bar the people directly granted all powers of local self-government to cities, so that as to such powers the legislature has nothing whatsoever to do. It may neither enlarge nor limit *101 them, for the grant is directly from the. people of the state to the people of the city.
The only other power that the general assembly might grant to the city of Cleveland would be state power, and that is evidently what the people of Cleveland had in mind when they adopted Section 1 of the charter; new or “additional power,” not power they already had.
Now, what state power does the Bauer law grant to municipalities ?
The majority opinion reads:
“The act of May 17, 1915 (108 O. L., 286), now ' Sections 4000-16 to 4000-28, inclusive, General Code, confers upon the municipalities of the state not only the authority to construct a rapid transit system, but also authority to levy a tax to pay the interest upon bonds issued for such purpose and to provide a sinking fund for their redemption at maturity, in excess of the limitations provided by law for maximum taxing rates on property in municipal corporations, except the combined maximum rates on property fixed in Section 5649-5&, General Code, and one-half mill in addition thereto.
“It was admitted by counsel in open court in the argument of this case that if the city of Cleveland were proceeding to construct a rapid transit system under the provisions of its charter, it could not, under the limitations imposed by law, levy a tax sufficient for such purpose. It must also be admitted, that the city cannot, by amendment to its charter, exempt such levy of taxes from the limitations imposed by statute; for it is expressly provided in Section 13, Article XVIII of the Con *102 stitution, as amended September 3, 1912, that ‘Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes.’ ”
Here we have a matter in which the state legislature has a right to grant state powers. The constitution expressly authorizes the legislature “to limit the power of municipalities to levy taxes and incur debts for local purposes,” and to the extent in which it raises the limit or enlarges the amount of the levy the general assembly is exercising a state power, a state legislative power directly and expressly granted to it in Section 13 of the “Home Rule Amendment.”
This is the only new or “additional power” granted to a municipality by the Bauer law.
If the contention of the majority opinion is right, that this was a grant to the municipality, then this part of the law may stand; because here is a statute, comprehended in the family of statutes named in Section 1, wherein some new or “additional power” is granted to the city of Cleveland, which it did not theretofore have.
The general assembly evidently anticipated that parts of the Bauer law might be unconstitutional. Accordingly it wrote into the Bauer act, Section 13:
“Should any section or provision of this act be decided by the courts to be invalid, the same shall not affect the validity of the act as a whole or any part thereof, other than the part so decided to be invalid,” etc.
Now, we have seen that all alleged grants of municipal power were invalid; first, because the city *103 of Cleveland already had them under the constitution and its charter; second, because, by necessary implication, the general assembly therefore could not grant them, the constitution having disposed of that matter. The only other class of powers referred to in the Bauer law is the tax-limit power, which is a state power, and which the legislature could grant by raising the tax limit, which it did in this case.
Therefore, so far as the Bauer act deals with municipal powers, which it does in the main, it is void and inoperative upon the city of Cleveland; so far as it grants a state power to the city of Cleveland, if Section 13 is of any avail, it is a valid law, and that power to-day rests in the city of Cleveland to be exercised in any manner that it may see fit, pursuant to its charter.
Section 2, Article XVIII of the Constitution of 1912, contains the following language:
“And additional laws may also be passed for the government of municipalities adopting the same; but no such additional law sháll become operative in any municipality until it shall have been submitted to the electors thereof, and affirmed by a majority of those voting thereon, under regulations to be established by law.”
Counsel for the rapid transit commission urge with much vigor the application of this part of Section 2 as authorizing the Bauer law for the city of Cleveland.
The argument is made with much ability, or at least plausibility, that the necessary steps were taken in substance to make such law operative in *104 the city of Cleveland, by virtue of the initiated ordinance, which it is urged was adopted by a majority vote of the people of Cleveland.
At first blush I am frank to admit I was disposed to give this matter very serious consideration, not being inclined to give undue weight to mere technical departures, and permitting them to be cured by the action of the voters on the ordinance. But upon further consideration, and looking at the case from another angle, the fallacy of this contention becomes very apparent.
Suppose, for “instance, the council had passed the ordinance, the mayor had thereupon made his appointment, and the commission had proceeded with its duties under the Bauer act, and at that stage of'the case an injunction was sought by some taxpayer, claiming that the Bauer act was not a valid operating law in the city of Cleveland, would it then have been urged that the Bauer law was such an “additional law?”
The only reason why the referendum was had was because the council refused to pass the initial ordinance, not the ordinance for the adoption of the law, but an ordinance provided within the law itself, the passage of which of course must have recognized the law as operative.
The majority opinion absolutely ignores this contention of thé rapid transit commission and does not even discuss it.
But waiving for a moment the irregular form in which the referendum was had, such referendum by the people is still limited by the test as to whether or nor such law is in conflict not only with the state *105 constitution but with the municipal constitution. Otherwise of what avail is any constitution ?
A favorable referendum had upon a law passed by the general assembly of Ohio does not give that law any higher rank than any other statute, and if the legislature of Ohio refuses to pass an act, and an initiated petition calls for a referendum thereon, which the people of Ohio later approve by such referendum, then such referendum law approved over the heads of the state legislature is still subject to all constitutional tests, because in Section 1, Article II, under the heading “Legislative,” the constitution itself reserves those tests and limitations in this language:
“The limitations expressed in the constitution, on the power of the general assembly to enact laws, shall be deemed limitations on the power of the people to enact laws.”
If this means anything, it means that a law, even approved by a referendum of the people, must conform to the constitutional test. If it be a state law, it must conform to the state constitution. If it be a municipal law, it must conform to the municipal constitution.
If this be not true, of what avail is any legislative constitution? If people may adopt a constitution to-day and enact a law to-morrow in plain conflict therewith, what becomes of your constitution ?
The fundamental theory of all constitutions, municipal, state, federal, is to give stability to law and order, to limit the powers therein delegated to the terms of the grant, and to. likewise limit- the officers who exercise the power.
*106 If the constitution, municipal, state, federal, prevents necessary legislative relief, let it be first amended, and then proceed with your relief.
So that, after all, the fact that there was a referendum upon the ordinance does not exempt the ordinance from the constitutional test, state or municipal.
Coming now to the provisions of the municipal constitution, these must remain fixed as they are in the charter, controlling and supreme as they are, until they are regularly amended as provided in the charter.
The director of law must remain the director of law, must not have his power as the legal supervisor of the city taken from him and conferred upon somebody else whom the rapid transit commission may appoint. Why? Because it is so ordered in the city charter.
The director of public service must continue to manage and supervise all public improvements, works, undertakings of the city, and be given charge of the construction, improvement, repair and maintenance of streets, public highways, sewers, drains, parks, boulevards, and the like, as provided in the charter. Why? Because it is so written in the charter.
The same is true of the board of control, board of public utilities, director of finance, city plan commission, civil service commission, and the like.
After all, in its strict sense, this law is not a grant of any power to the city, but rather to the rapid transit commission.
*107 By what right may the state legislature create a municipal office? If the selection or designation of the officers of a municipality is not purely a matter of municipal concern, is not a matter embraced within the “Home Rule” power, I would like to know what is.
If the powers they shall exercise in conducting the municipal government under a charter are not a municipal matter, and exclusively a municipal matter, I would like to know what is.
Let us apply one more test. Suppose there had been no Bauer law, but the city council, pursuant to its legislative power, as defined by the city charter under the constitution, had enacted an ordinance embracing all the terms and provisions of the Bauer law, save and except the raising of the tax limit, would any one contend that it could thus defy the city charter as to the jurisdiction and powers of the various officers, boards, departments and commissions therein named?
If the city council may not disrupt and disorganize the charter, the constitution of the city, how can it be contended in common sense that the state legislature may do so in a municipal matter? And surely the constitution itself treats this public utility as a municipal matter.
If the “Home Rule Amendment” and the city charters adopted pursuant thereto are to be more than mere ornamental scraps of paper, it is important that legislative interference with municipal affairs in Ohio shall come to an end.
We have the following objections to the Bauer law:
*108 1. The attempt by the state legislature to create a municipal officer or municipal board, which is a purely municipal matter.
2. Conferring or delegating municipal powers to such municipal officer or municipal board, which is likewise purely a municipal matter.
3. In such delegation depriving officers already vested with those powers under the city constitution, the charter.
4. Numerous other provisions prescribing how the power shall be exercised, in clear conflict with the provisions of the organic law of the city, the charter.
But not merely these. Back of all these objections is an inherent defect in the qualification of the rapid transit commission, composed of five members.
The Bauer act in Section 1 provides that “they shall be electors of the county within which such city is located, and a majority of such commissioners shall be electors of such municipal corporation.”
This is certainly “Home Rule” with a vengeance. Suppose now that the mayor, exercising his privilege, appoints three electors from the city, two electors from outside of the city. The two members outside of the city would frequently exercise the balance of power, and you would have the city’s policies determined by those who were not electors of the city. The absence of one or more of the city members of the commission would give the country members equal or majority control of the board; that is, in this most important matter to the people *109 of Cleveland their municipal affairs would be managed and controlled by those who were not electors of the city.
This is a new edition of the doctrine of “Home Rule,” with which the voters of the city cannot be said to be familiar.
It looks very much as if some jobs were to be created for someone’s benefit, rather than for the welfare of the city under the exercise of the powers of “Home Rule.”
With the Bauer law raising the tax limit the «city of Cleveland can proceed agreeable to its own charter, without any reference to the Bauer act, pass the necessary legislation, and provide forthwith for the construction of its rapid transit system, without aid or interference of the municipal powers defined and distributed by the Bauer act, all under the “Home Rule” amendment to the Ohio constitution and the “Home Rule” charter of the city, all the while safeguarding the sacred right of all just powers of government derived from “the consent of the governed.”
I have discussed this matter at some length because I see in this case another invasion of the junker variety that is wholly inconsistent with the democracy for the cities of Ohio, as it was planned and provided through the “Home Rule” amendment in 1912.